Filed in open Court

10|25|05

Ralph L. DeLoach, Clerk

By B.U.                e
                        Deputy

Roger L. Falk, Ks.Sp.Ct. #09972, of the
LAW OFFICE OF FALK & ASSOCIATES, P.A.
301 West Central Avenue
Wichita, Kansas 67202-1077
Tel: (316) 265-5115

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 05-40054-03-SAC |
| Plaintiff, | ) | |
| | ) | PETITION TO ENTER PLEA OF GUILTY |
| -vs.- | ) | AND ORDER ENTERING PLEA |
| | ) | PURSUANT TO FED.R.CRIM.P. 11(a) |
| P.J. SERVICES, L.L.C., | ) | |
| | ) | |
| Defendant. | ) | |

(Pursuant to Federal Rules of Criminal
Procedures, Rules 10 and 11)

      This Defendant, through it's principals and agents, Petrus Jacobus Botes and Joyce Yvonne Coetzee, represents to the Court:

      (1)    That this Defendant is a Limited Liability Company formed pursuant to K.S.A. 17-7601, *et seq.,* by the two named Co-Defendants, Petrus Jacobus Botes and Joyce Yvonne Coetzee (who are husband and wife) in this case, on or about January 27, 2000, by filing articles of Organization with the Secretary of State for the State of Kansas. The Co-Defendants, Petrus Jacobus Botes and Joyce Yvonne Coetzee, are the only persons or entity's who have any right title or interest in this Limited Liability Company. Therefore, this Defendant is united in interest with the two Co-Defendants, Petrus Jacobus Botes and Joyce Yvonne Coetzee. This Defendant request that all proceedings against it be in its true and correct name.

      (2)    This Defendant is represented by a two lawyers in this matter, their names and addresses are as follows:

        Roger L. Falk                      John J. Ambrosio
        301 West Central Avenue         5897 S.W. 29th Street
        Wichita, Kansas 67202          Topeka, Kansas 66614

      (3)    This Defendant, through counsel and it's principals and agents received a copy of the Superseding Indictment (Document #8) before being called upon to enter a plea herein.  This

Defendant has, through it's counsel, principals and agents read the Superseding Indictment and has discussed it with it's lawyers through said principals and agents, Petrus Jacobus Botes and Joyce Yvonne Coetzee. This Defendant, through it's agents and principals, fully understands each and every charge made against it in the Superseding Indictment.

(4)     This Defendant, through it's principals and agents, Petrus Jacobus Botes and Joyce Yvonne Coetzee, told it's lawyers all of the facts and circumstances known to it's principals and agents about the charges made against said Defendant in the Superseding Indictment. This Defendant, through it's principals and agents, believes that it's lawyers are fully informed on all such matters.

(5)     This Defendant knows, and it's principals and agents have been advised, that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before this Defendant's plea of guilty can be accepted. This Defendant represents to the Court that it did the following acts in connection with the charges made against me in Count 2 - 7, 14, 15 and 24 of the Superceding Indictment.

**PLEASE SEE PARAGRAPH NUMBER 3 OF THE ATTACHED PLEA AGREEMENT, BEGINNING ON PAGE 5, AND CONTINUING THROUGH PAGE 10 OF SAID PLEA AGREEMENT. THIS DEFENDANT HEREBY ADOPTS THE STATEMENTS CONTAINED IN PARAGRAPH NUMBER 3, THROUGH IT'S PRINCIPALS AND AGENTS, AS THE FACTUAL BASIS FOR THIS PLEA.**

(6)     This Defendant's lawyers have counseled and advised it, through it's principals and agents, on the nature of each charge, on all lesser included charges, and on all possible defenses that it might have in this case, by fully discussing the same with the principals and agents for said Defendant.

(7)     This Defendant knows and is aware that it has the right to plead "NOT GUILTY" to any offense charged against it. If this Defendant plead "NOT GUILTY" it knows the Constitution guarantees it: a) the right to a speedy and public trial by a jury; b) at that trial, and at all stages of the proceedings, the right to the assistance of a lawyer, c) the right to see and hear all witnesses called to testify against it, and the right to cross-examine those witnesses; d) the right to use the power and process of the Court to compel the production of any evidence, including the attendance of any witnesses in it's favor; and e) the right not to be compelled to incriminate it's self by having it's principals or agents take the witness stand, and if it's principals or agents did not take the witness stand, no inference of guilt may be drawn from such failure.

(8)     This Defendant knows and is aware that if said Defendant pleads "GUILTY," pursuant to Fed.R.Crim.P. 11(a), it is thereby waiving it's right to a trial, and that there will be no further trial of any kind, either before a Court or Jury; and further, said Defendant realizes the Court

may impose the same punishment as if it had pleaded "NOT GUILTY", stood trial, and been convicted by a jury.

(9)    This Defendant knows and is aware that if it pleads "GUILTY", the Court will ask this Defendant, through it's principals and agents, Petrus Jacobus Botes and Joyce Yvonne Coetzee, questions about the offense to which is has pleaded, and since these principals and agents will be answering these questions under oath, on the record, and in the presence of this Defendant's lawyers, that it's answers may later be used against it in a prosecution for perjury or false statement.

(10)    This Defendant's lawyers have informed it, through it's agents and principals, that the plea of "GUILTY" could subject me to the following sentences for each Count that I am pleading guilty to:

**COUNTS 2-7, 14 and 15**: There is no mandatory minimum sentence and the maximum punishment which, as provided by law, is **TEN (10)** years imprisonment to be followed by a term of supervised release of at least **THREE (3)** years and not to exceed **THREE (3)** years [greater of 18 U.S.C. § 3583(b) or Title 21 Drug Offense] and a fine of up to **TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00)**, (which may accrue interest if not paid at time of sentencing) for the offense(s) charged in Counts 2 - 7, 14 and 15 of the Superseding Indictment. This Defendant has also been informed that should the Court find it in violation of the supervised release term, the term could be revoked and an additional term of imprisonment imposed. This Defendant has also been informed that the Court may order it to make restitution in compliance with 18 U.S.C. § 3663 and § 3664 or as a condition of supervision, if such is ordered under 18 U.S.C. § 3563, in addition to any other penalty provided by law. This Defendant, through it's principals and agents, further understands that if it is pleading "GUILTY" to an offense which is subject to the Sentencing Reform Act, it cannot be released on parole and, if imprisonment is ordered in it's case, the sentence imposed by the Court will be the sentence it will serve less any good time credit if it is earned.

**COUNT 24:** Charges one count of criminal forfeiture. As a result of committing the offenses alleged in Counts 1- 7, 14 and 15, any property constituting or derived from the proceeds of the above illegal activity, obtained directly or indirectly as a result of said offenses, including but not limited to a money judgment or substitute assets up to the value of said money judgment, may be forfeited by the Court.

(11)    This Defendant knows that in addition to any other penalty imposed, including any fine or restitution order, the Court is required to impose a special monetary assessment in the amount of $400.00 for each count in which the offense occurred after April 24, 1996. ($100.00 for a felony, $25.00 for a Class A misdemeanor, 10.00 for a Class B misdemeanor, and $5.00 for a Class C misdemeanor; *if the defendant is other than an individual, the assessment is $400.00 for a felony*, $25.00 for a Class A misdemeanor, $50.00 for a Class B misdemeanor, $25.00 for a Class C misdemeanor). **I UNDERSTAND THIS SPECIAL ASSESSMENT MUST BE PAID AT THE TIME OF SENTENCING HEARING UNLESS THE COURT DIRECTS OTHERWISE.**

(12)     This Defendant understands that if this case involves drug trafficking or drug possession, the Court may deny or suspend this Defendant's eligibility to receive federal benefits pursuant to 21 U.S.C. § 862, except for those specifically exempted.  This Defendant understands that if this is it's second or subsequent conviction for possession of a controlled substance, the Court may order it to complete drug treatment or community service as specified in the sentence as a condition for reinstatement of benefits.

(13)     This Defendant also knows and understands that the Court may also order, in addition to the penalty imposed, that it give reasonable notice and explanation of the conviction, in such form as the Court may approve, to the victims of the offense.

(14)     This Defendant, through it's principals and agents, Petrus Jacobus Botes and Joyce Yvonne Coetzee, has been advised and understands that if it is not a U.S. citizen, a conviction of a criminal offense may result in deportation from the United States, exclusion from admission to the United States, and/or denial of naturalization.

(15)     If this Defendant is on probation or parole in this or any other Court, it knows that by pleading guilty here, it's probation or parole may be revoked and it may be required to serve time in that case, which may be consecutive, that is, in addition to any sentence imposed upon it in this case.

(16)     This Defendant declares that no office or agent of any branch of government (federal, state or local) has promised, suggested or predicted that it will receive a lighter sentence, or probation, or any form of leniency if it pleads "GUILTY," except as follows: (here insert any promises or concessions made to the defendant or to his Attorney).  If plea of "GUILTY" is the result of a plea agreement, refer to paragraph (18).

If anyone else, including this Defendant's attorneys, made such a promise, suggestion, or prediction, except as noted in the previous sentence, this Defendant knows they had no authority to do so.

This Defendant knows that the sentence it will receive is solely a matter within the control of the Judge.  This Defendant understands that there is no limitation on the information the Judge can consider at the time of sentencing concerning this Defendant's background, character, and conduct, provided the information is reliable, 18 U.S.C. § 3661.  This Defendant understands that if it is subject to sentencing under the Sentencing Reform Act and the Sentencing guidelines issued by the United States Sentencing Commission, a sentencing guideline range is established.  The Judge may select a sentence from within the guideline range, unless this case presents unusual features which permit the Judge to depart from the Guidelines and impose a sentence either above or below the recommended guidelines range.  However, said guidelines are no longer mandatory, but are instead advisory in nature.  In determining the guideline range, whether to depart, and the sentence to impose, the Court may take into account all relevant criminal conduct, which may include counts to which this Defendant has not pled guilty or been convicted and take into account background

characteristics, including, but not limited to, the recency and frequency of this Defendant's criminal conduct, it's role in the offense, victim-related circumstances, and it's acceptance of responsibility for the offense, may have specific effect on the sentence.

This Defendant hopes to receive leniency, but is prepared to accept any punishment permitted by law which the Court sees fit to impose. However, this Defendant respectfully request the Court to consider, in mitigation of punishment, that it has voluntarily entered a plea of guilty.

(17)    This Defendant understands that a U.S. Probation Officer will be assigned to conduct a thorough presentence investigation to develop all relevant facts concerning this case unless the Court finds that there is in the record sufficient information to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553. The report of the presentence investigation shall contain the factors set forth in Rule 32. These include the classification of the offense and of the defendant under the categories established by the Sentencing Commission, the sentencing options available to the Court, and the sentencing range the officer believes applicable. The report shall include the history and characteristics of the defendant and such other information required by the Court organizing the factors set forth in paragraph (16) above.

(18)    This Defendant's plea of guilty **IS** the result of a plea agreement entered into between the government's attorneys, it's attorneys and this Defendant. A true and correct copy of said plea agreement is attached hereto and incorporated herein by reference as though more fully set out herein.

(19)    This Defendant believes that its lawyers have done all that anyone could do to counsel and assist it, AND IT IS SATISFIED WITH THE ADVICE THEY HAVE GIVEN THIS DEFENDANT.

(20)    This Defendant knows that the Court will not permit any Defendant to plead "GUILTY" who maintains they or it are innocent and, with that in mind, and because this Defendant is "GUILTY", and does not believe it is innocent, this Defendant wishes to plead "GUILTY", and respectfully request the Court to accept this Defendant's plea of "GUILTY" and to have the Clerk enter this Defendant's plea of "GUILTY," pursuant to Fed.R.Crim.P. 11(a), as follows:

**GUILTY TO COUNT 2-7, 14 & 15 OF THE SUPERSEDING INDICTMENT.**

(21)    The principals and agents of this Defendant, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, both have clear minds at the time that this plea is entered on behalf of this Defendant. Neither of the above named Co-Defendant's are under the influence of alcohol or drugs, and they are not under a doctor's care. The only drugs, medicines, or pills that they have taken within the past seven (7) days are: _____
_____.

(22)    Neither of the principals or agents of this Defendant, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, have ever been confined in any institution for the treatment of mental illness.  Neither of the principals or agents of this Defendant, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, have ever been adjudicated mentally incompetent.  No psychiatrist, physician, or psychologist has ever found either of the principals or agents of this Defendant, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, to be mentally ill.  Neither of the principals or agents of this Defendant, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, know of any reason why their mental competence at the time of the commission of the alleged offense, or at the present time, should be questioned.  (If there are any exceptions to the above statement, explain below.)

(23)    This Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, offer this Defendant's plea of "GUILTY" freely and voluntarily, and further state that this plea of guilty is not the result of any force or threats against this Defendant, or of any promises made to it, other than those noted in this petition.  This Defendant further offers this plea of "GUILTY" with full understanding of all the matters set forth in the Superseding Indictment and in this Petition, and in the certificate of this Defendant's attorneys which is attached to this Petition.

(24)    This Defendant waives the reading of the Superseding Indictment in open court, and requests the Court to enter this Defendant's plea of "GUILTY," pursuant to Fed.R.Crim.P. 11(a) as set forth in paragraph (20) of this Petition.

(25)    This Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, swear that it has read, understood, and discussed with it's attorney, each and every part of this Petition to Plea Guilty, and that the answers which appear in every part of this Petition are true and correct.

Signed and Sworn to by this Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, in open court, in the presence of this Defendant's attorneys, this 25th day of October, 2005.

Joyce Yvonne Coetzee,
President & Co-Principal
for P.J. Services, L.L.C., Defendant

Petrus Jacobus Botes,
Manager & Co-Principal
For P.J. Services, L.L.C., Defendant

-6-

Subscribed and Sworn to before me, this 25th day of October, 2005.

_Brenda M. Wessel_
Deputy Clerk

## CERTIFICATE OF COUNSEL

The undersigned, as lawyers and counselors for the Defendant, P.J. Services, L.L.C., hereby certify:

(1)     We have read and fully explained to the Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, the allegations contained in the Superseding Indictment in this case.

(2)     To the best of our knowledge and belief, the statements, representations and declarations made by this Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, in the foregoing Petition are in all respects accurate and true.

(3)     We have explained the maximum penalty for each count to the Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes.

(4)     The plea of "GUILTY" offered by this Defendant in paragraph (20) accords with my understanding of the facts as related to us and is consistent with our advice to the Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes.

(5)     In our opinion, this Defendant's waiver of reading of the Superseding Indictment (Document #8) in open court as provided by Rule 10 is voluntarily and understandingly made, and we recommend to the court that the waiver be accepted.

(6)     In our opinion, the plea of "GUILTY" offered by this Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, in paragraph (20) of the Petition is voluntarily and understandingly made. We jointly recommend that the Court accept the plea of "GUILTY."

(7)     We have made no predictions or promises to this Defendant concerning any sentence the Court may award, except as noted in the space below. NONE

(8)    We further represent to the Court that the Defendant's plea of "GUILTY" is the result of a plea agreement, and a true and correct copy of said agreement is attached hereto and incorporated herein by reference as though more fully set forth herein.

Signed by us in open court in the presence of this Defendant above named and after full discussion of the contents of this certificate with the Defendant, through it's principals or agents, the two named Co-Defendants, Joyce Yvonne Coetzee and Petrus Jacobus Botes, this 25th day of October, 2005.

_____                    _____
John J. Ambrosio, Ks.Sp.Ct. #07489                   Roger L. Falk, Ks.Sp.Ct. #09972
Attorney for Defendant                               Attorney for Defendant
5897 S.W. 29th Street                                501 West Central Avenue
Topeka, Kansas 66614                                 Wichita, Kansas 67202-1077


## ORDER ACCEPTING GUILTY PLEA

I find that the plea of guilty was made by the Defendant freely, voluntarily, and because she is guilty as charged, and not out of ignorance, fear, inadvertence or coercion, and with full understanding of its consequences.  I further find that the Defendant has admitted the essential elements of the crime charged and is mentally competent.

IT IS THEREFORE ORDERED, that the Defendant's plea of "GUILTY" be accepted and entered as prayed for the Petition and as recommended in the certificate of his lawyer.

Done in open court this 25th day of October, 2005.

_____
HONORABLE SAM A . CROW
Judge of the United States District Court


C:\Documents and Settings\Roger Falk\My Documents\Criminal\Coetzee, Joyce Yvonne\10-25-05 Petition to Enter Guilty Plea - PJ Services.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  05-40054-03-SAC |
| | ) |
| PJ SERVICES LLC, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney, James A.

Brown, and PJ Services LLC,  the defendant, through Petrus Jacobus Botes and Joyce Yvonne

Coetzee, the principals of PJ Services LLC, as well as their attorneys, John J. Ambrosio and

Roger L. Falk, hereby enter into the following plea agreement pursuant to Rule 11 of the Federal

Rules of Criminal Procedure:

1.     **Defendant's Guilty Plea.**     The defendant agrees to plead guilty to Counts 2, 3,

4, 5, 6, 7, 14, 15 and 24 of the Superseding Indictment (Document #8).

**Count 2** charges a violation of Title 18, United States Code, § 1001(a)(2), that is,

knowingly and willfully making a materially false, fictitious, or fraudulent statement or

representation in any matter within the jurisdiction of the executive, legislative, or judicial branch

of the Government of the United States.  By entering into this plea agreement, the defendant

admits to knowingly committing this offense, and to being guilty of this offense.  The defendant

understands that the maximum sentence which may be imposed as to Count 2 of the Superseding

Indictment to which the defendant has agreed to plead guilty is: Not more than 5 years'

imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment.  (18 U.S.C. § 1001).

**Count 3** charges a violation of Title 18, United States Code, § 1546(a), that is, making a false statement under penalty of perjury with respect to a material fact in a document required by the immigration laws.  By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense.  The defendant understands that the maximum sentence which may be imposed as to Count 3 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment.  (8 U.S.C. § 1546(a)).

**Count 4** charges a violation of Title 8, United States Code, § 1324(a)(1)(A)(iv), that is, encouraging or inducing an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, for the purpose of commercial advantage or private financial gain.  By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense.  The defendant understands that the maximum sentence which may be imposed as to Count 4 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment.  (8 U.S.C. § 1324(a)(1)(B)(i)).

**Count 5** charges a violation of Title 8, United States Code, § 1324(a)(1)(A)(v)(I), that is, conspiring to encourage or induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, for the purpose of commercial advantage or private financial gain.  By

2

entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 5 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment. (8 U.S.C. § 1324(a)(1)(B)(i)).

**Count 6** charges a violation of Title 8, United States Code, § 1324(a)(1)(A)(v)(I), that is, conspiring to encourage or induce an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, for the purpose of commercial advantage or private financial gain. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 6 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment. (8 U.S.C. § 1324(a)(1)(B)(i)).

**Count 7** charges a violation of Title 18, United States Code, § 1341, that is, mail fraud. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 7 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 20 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment. (18 U.S.C. § 1341).

**Count 14** charges a violation of Title 18, United States Code, § 1546(a), that is, making a false statement under penalty of perjury with respect to a material fact in a document required by the immigration laws. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 14 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment. (8 U.S.C. § 1546(a)).

**Count 15** charges a violation of Title 8, United States Code, § 1324(a)(1)(A)(iv), that is, encouraging or inducing an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law, for the purpose of commercial advantage or private financial gain. By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of this offense. The defendant understands that the maximum sentence which may be imposed as to Count 15 of the Superseding Indictment to which the defendant has agreed to plead guilty is: Not more than 10 years' imprisonment, a $250,000 fine, 3 years supervised release, and a $100 special assessment. (8 U.S.C. § 1324(a)(1)(B)(i)).

**Count 24** charges one count of criminal forfeiture.. As a result of committing the offenses alleged in Count 2, 3, 4, 5, 6, and 7, the defendant agrees to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of said offenses, including but not limited to a money judgment or substitute assets up to the value of said money judgment.

4

2.     **Relevant Conduct.**     The defendant agrees that the conduct charged in any dismissed counts of the Superseding Indictment is to be considered as well as all other uncharged related criminal activity as relevant conduct for purposes of calculating the offense level for Counts 2, 3, 4, 5, 6, 7, 14, and 15, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.   The parties agree that the total offense and relevant conduct involved more than 7 but less than 25 aliens, and a loss of more than $70,000.00 (USD) but less than $120,000.00 (USD).

3.     **Factual Basis for the Guilty Plea.**     The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

**Count Two:**
On April 30, 2003, Petrus Jacobus Botes submitted an Application for Alien Employment Certification (form ETA 750) with the required accompanying Agricultural and Food Processing Clearance Order (form ETA 790), dated April 23, 2005, to the U.S. Department of Labor's regional office in Dallas, Texas in his capacity as a co-owner, co-manager, and co-operator of PJ Services, LLC.  Botes submitted this application on behalf of "Edgar Russel" in Russell's alleged capacity as an employer who was seeking farm workers.  This application, which was approved by an official of the Department of Labor on June 17, 2003, bore the purported signature of "Edgar Russel" with a listed address of "15301 100th Street NE Bathgate ND 58216-9630."  On April 21, 2005, Russell Edgar testified before the Topeka Grand Jury.  He testified that he lived at 15301 100th Street Northeast, Bathgate, North Dakota, but that he did not sign these forms and did not authorize Botes or PJ Services LLC to sign the forms or make representations thereon on his behalf.  Russell Edgar further testified that the form ETA 790 contained false statements, namely, the description of proposed boarding arrangements–as represented in item 14 of the form.   The submission of the form ETA 790 and the matters represented thereon related to a matter within the jurisdiction of the United States Department of Labor, an agency of the United States.

**Count Three:**
On or about January 6, 2005, Petrus Jacobus Botes, in his capacity as a co-owner, co-manager, and co-operator of PJ Services LLC, submitted a Petition for

Nonimmigrant Worker (form I-129) to the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services. This petition was submitted on behalf of Blue Hill Feeders and bore the purported signature of "Robert Brant," as the listed petitioner, and was dated December 31, 2004, with a listed address of "PO Box 241, Bennington, Kansas." This petition sought and amendment of the H-2A visa of Johan David Kruger so that he could work for a new employer, identified as Blue Hill Feeders. With the assistance of Botes and PJ Services, Kruger had previously entered the United States on an H-2A visa with a listed employer of Kalisiak Harvesting, but he had not worked for this employer as of January 6, 2005. Attached to this form I-129 Petition was a document entitled "Addendum of Johan David Kruger," wherein Kruger is purported to represent his employer as "Kalisiak Harvesting Texas, USA," which is followed by the statement "I have worked for Kalisiak Harvesting on his farm in Dalhart, Texas, USA". Botes signed this I-129 Petition as "Robert Brant" under penalty of perjury. On April 21, 2005, Johan David Kruger testified before the Topeka Grand Jury. He testified he never worked for Kalisiak Harvesting, that the statements attributed to him on this addendum were false, that he had no knowledge that the addendum was sent on his behalf, and that he did not authorize anyone to send it on his behalf. The addendum was found on a hard disk device taken from a computer seized during the execution of a search warrant conducted on June 2, 2005, at 454 K 18 N, Bennington, Kansas, which is the residence and business address of Petrus Jacobus Botes, Joyce Yvonne Coetzee, and PJ Services, LLC. Based upon the forensic search of the hard disc device, the addendum was created on this computer in January 2005.

**Counts Four and Five:**
Johan David Kruger testified before the Topeka Grand Jury on April 21, 2005. He testified that on August 13, 2004, he entered the United States on an H-2A agricultural visa that he obtained from the U.S. Consulate in Johannesberg, South Africa. To facilitate his entry, Kruger enlisted the services of Euro Personnel in Pretoria, South Africa, to whom he paid a fee. Euro Personnel worked in conjunction with P.J. Services in Bennington, Kansas, to obtain a visa for Kruger to work in the United States. With Euro Personnel's and PJ Services' assistance, Kruger obtained an H-2A visa to enter the United States; the employer listed on his entry visa was Kalisiak Harvesting, located in Texas. Upon arriving in the United States, Kruger spoke with Joyce Coetzee, who arranged for Kruger to be transported to the Billy Don Jones farm in Texas. After a month of working with the Billy Don Jones farm, Kruger telephoned Joyce Coetzee and asked to be relocated to another employer. Joyce Coetzee told Kruger she would send the appropriate paperwork to the immigration authorities to relocate him to the Blue Hill Feeders farm in Lucas, Kansas. After this phone call, Kruger went to Kansas, where he was picked up by Petrus Botes at the Salina bus station. Botes

transported Kruger to the Botes's business/residence in Bennington, Kansas, where Kruger met Joycee Coetzee, who telephoned Blue Hill Feeders to finalize the arrangements for Kruger's new employment.   On or about September 19, 2004, Botes and Coetzee arranged for a third party to transport Kruger to Blue Hill Feeders from the Botes's and Coetzee's business/residence.  Kruger worked for Blue Hill Feeders until January 21, 2005.  At no time during his stay in the United States did Kruger work for Kalisiak Harvesting, and at no time was Kruger authorized by an agency of the United States to work for Blue Hill Feeders or the Billy Don Jones farm.  During the search of the Botes's business/residence conducted on June 2, 2005, a personnel file for Johan David Kruger was located, and this file contained a Letter of Appointment indicating that Kruger had received an offer of employment with Kalisiak Harvesting, when, in truth and in fact, he had not.

**Count Six:**
Eugene Van Der Merwe testified before the Topeka Grand Jury on April 21, 2005. He testified that on August 12, 2004,  he entered the United States on an H-2A agricultural visa that he obtained from the U.S. Consulate in Johannesberg, South Africa.  To facilitate his entry, Kruger enlisted the services of Euro Personnel in Pretoria, South Africa, to whom he $1100.00.  Euro Personnel worked in conjunction with P.J. Services in Bennington, Kansas, to obtain a visa for Van Der Merwe to work in the United States.  With Euro Personnel's and PJ Services' assistance, Van Der Merwe obtained an H-2A visa to enter the United States; the employer listed on his entry visa was Billy Don Jones farm, located in Texas. Prior to coming to the United States, Van Der Merwe spoke with Joyce Coetzee about the type of work he was going to do in the United States, the fees required of Euro Personnel and PJ Services LLC for their services, and flight arrangements. Upon arriving in the United States, Joyce Coetzee  arranged for Van Der Merwe to be transported to the Billy Don Jones farm. After a month of working with the Billy Don Jones farm, Van Der Merwe telephoned Joyce Coetzee and asked to be relocated to another employer.  Joyce Coetzee said she would make arrangements to relocate him to the Blue Hill Feeders farm in Lucas, Kansas. After this phone call, Van Der Merwe went to Kansas, where he was picked up by Petrus Botes at the Salina bus station. Botes transported Van Der Merwe to the Botes/Coetzee business/residence in Bennington, Kansas, where he met Joycee Coetzee, who stated that she had found him new employment.  On or about September 19, 2004, the Boetes and Coetzee arranged for a third party to transport Van Der Merwe to Blue Hill Feeders from the Botes's business/residence.  Van Der Merwe worked for Blue Hill Feeders until January 21, 2005.  Van Der Merwe had, at no time during his employment with Blue Hill Feeders, authorization from an agency of the United States to work for Blue Hill Feeders.

**Count Seven:**

On or about August 26, 2003, Petrus Jacobus Botes mailed, via the U.S. Mail, a form generated by the U.S. Department of Labor entitled Application for Alien Employment Certification, which named "Edgar Russel" as an employer seeking certification of an unidentified alien for employment in the United States. This form listed P.J. Services LLC as the agent of "Edgar Russel," with a listed agent address of 606 N. Struble, P.O. Box 241, Bennington, KS 67422. As a result of Botes depositing this form in the U.S. Mail, this form was delivered to the Citizenship and Immigration Services (CIS) processing center located in Lincoln, Nebraska by the United States Postal Service. As part of the application process to obtain authorization for an alien to work in the United States, this form is sent to CIS. During the search of the Botes's business/residence conducted on June 2, 2005, Immigration and Customs Enforcement agents located a portion of a USPS Priority Envelope that was used to send this form. This USPS envelope indicates the date of August 26, 2003 as the date on which the form was sent to the CIS processing center in Lincoln, Nebraska. This form contained numerous false statements, including the representation that the form had been signed by "Edgar Russel," when, in truth and in fact, it had not, as well as false representations in box 21 of the form that efforts had been made by "Russel" to recruit U.S. workers but that said efforts had been unsuccessful. The requested certification was granted on June 7, 2003. This form was sent as part of a scheme devised by Botes and PJ Services LLC to defraud the U.S. government by submitting false immigration documents for the purpose of obtaining certifications and approvals from the U.S. Department of Labor and Citizenship and Immigration Services so that visas could be obtained for South African citizens who desired to work in the United States.

**Counts Fourteen & Fifteen:**
On or about February 8, 2005, Catherina E. du Preez, a citizen of South Africa, contacted Joyce Coetzee and P.J. Services LLC about obtaining a position of employment at Williams Farms in Powder River, Wyoming, in the United States. In a series of e-mail exchanges with du Preez, Joyce Coetzee agreed to help du Preez find employment at Williams Farms, and du Preez paid her a fee of $1500 by depositing the same into a bank account in South Africa designated by Joyce Coetzee. On March 23, 2005, Joyce Coetzee notified du Preez by e-mail that she would not be able to start work at Williams Farms until April 29, 2005, but du Preez had booked an airline ticket to come to the United States on April 6, 2005. On March 23, 2005, Joyce Coetzee notified du Preez by e-mail that she was going to put du Preez "on another employer's permit" so that du Preez could come over earlier and then change her back to a permit to work at Williams Farms for an additional fee of $250.00. For the purpose of helping du Preez obtain a temporary agricultural visa to enter into the United States, Joycee Coetzee prepared an employment letter, dated March 29, 2005, purporting to have been prepared on the letterhead of "Burnett Land & Livestock Ltd., LLP, PO Box 4, Hereford, CO

8

80732" and purporting to have been signed by "Jeff Burnett," stating that "I hereby confirm that I do offer Ms. Catherina E. du Preez a position with Burnett Land & Livestock as from March 29, 2005 until January 25, 2006 as a milker. Refer to Approval Notice LIN-05-115-52629.  Please be so kind as to assist Ms. Du Preez with her application for an H-2A work visa."  Coetzee prepared this letter, which was required as part of the visa application process for an H-2A agricultural visa, and directed du Preez to present this letter to the U.S. Consulate in South Africa as part of said process so that du Preez could obtain a visa to enter the United States.  The H-2A nonimmigrant visa application requires that statements thereon be certified as true.  At Joyce Coetzee's direction, du Preez listed this employer on her nonimmigrant visa application and was granted a visa on March 31, 2005 by the United States consulate in South Africa to enter into the United States to work for Burnett Land & Livestock.  In June 2005, Jeffrey S. Burnett advised investigators that he did not prepare the letter, had not offered du Preez employment, had never heard of du Preez as of March 29, 2005, and had not signed the letter. A letter matching the March 29, 2005 letter was located on a hard disk device during a computer forensic search of computers taken from the business/residence of Coetzee.  On April 6, 2005, du Preez entered the United States at Denver, Colorado and began to work for Williams Farms.  Du Preez never worked or intended to work at Burnett Land & Livestock, a fact known to Coetzee.


At all times relevant to the commission of Counts 2, 3, 4, 5, 6, 7, 14, and 15, Petrus Jacobus Botes and Joyce Yvonne Coetzee were acting in their capacities as co-managers, co-owners, and co-operators, and co-principals of PJ Services, LLC, which they formed as a Limited Liability Company under K.S.A. 17-7601 et. seq., on or about January 27, 2000, by filing Articles of Organization with the Secretary of State of the State of Kansas.  In said filing, attached hereto as Exhibit 1, Petrus Jacobus Botes and Joyce Yvonne Coetzee are named as the only two "members" of PJ Services LLC.  Further, at all times relevant to the commission of Counts 2, 3, 4, 5, 6, 7, 14, and 15, PJ Services LLC was a for-profit business based in Bennington, Kansas, whose primary business activity was to assist South African citizens in obtaining visas and other immigration and labor documents required under the laws of the United States to enter into and maintain employment in the United States.  As part of its regularly conducted course of business activity, PJ Services LLC petitioned agencies of the United States government, including the U.S. Department of Labor, which is an agency of the United States, and the Citizenship and Immigration Service, which is an agency organized within the U.S. Department of Homeland Security, to obtain and maintain visas on behalf of South African citizens who had paid PJ Services LLC to prepare required U.S. immigration and labor documents and forms on their behalf.  Further, at all times relevant to this indictment, Petrus Jacobus Botes and Joyce Yvonne Coetzee

9

shared roughly equal management responsibilities with respect to the day-to-day operations of PJ Services LLC.

4.    **Government's Agreements.**    In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

a.    To not file any additional charges against the defendant arising out of the facts forming the basis for the present Superseding Indictment, to dismiss the original Indictment (Document #1), and to dismiss Count 1, 8-13, 16-23, of the Superseding Indictment insofar as they apply to the defendant;

b.    To recommend a sentence at the low end of the applicable guideline range;

c.    To recommend the defendant receive a 2-level reduction in the applicable offense level under the sentencing guidelines for acceptance of responsibility, § 3E1.1(a), or if the offense level is 16 or greater, the government will recommend a 3-level reduction under § 3E1.1(b). However, the government's obligation concerning acceptance of responsibility is contingent upon the defendant's continuing manifestation of acceptance of responsibility as determined by the United States. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct that the court determines to be true, willfully obstructs or impedes the administration of justice as defined in U.S.S.G. § 3C1.1 (or willfully attempts to do so), or engages in additional criminal conduct, the United States reserves the right to withdraw this recommendation without breaching this agreement;

d.    To not request an upward departure from the applicable sentencing guideline range if the defendant agrees not to request a downward departure.

e.    To recommend that the special assessment be waived.    RLF
    TJ
    JO.

In the event the defendant breaches or violates this plea agreement or otherwise fails to adhere to its terms, the United States shall not be bound by this paragraph and may pursue any additional charges arising from the criminal activity under investigation as well as any perjury, false statement, or obstruction of justice charges which may have occurred. The defendant

10

understands and agrees that in the event the defendant violates this plea agreement, all statements made by the defendant subsequent to the execution of this plea agreement, any testimony given by defendant before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against the defendant in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rules of Criminal Procedure, § 11(e)(6), Federal Rules of Evidence, § 410, or any other federal rule that pertains to the admissibility of any statements made by the defendant subsequent to this plea agreement.

5. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence the defendant will receive.

6. **Information Provided by Defendant.** The United States agrees not to use new information the defendant provides about the defendant's own criminal conduct except as specifically authorized by U.S.S.G. § 1B1.8. As such, this information may be revealed to the Court but may not be used against the defendant in determining the defendant's applicable guideline range or departing above his guideline range. Defendant understands and agrees, however, that under U.S.S.G. § 1B1.8, there shall be no such restrictions on the use of the information: (1) previously known to the United States; (2) revealed to the United States by, or discoverable through, an independent source; (3) in a prosecution for perjury or giving a false statement; (4) in the event there is a breach of this agreement; or (5) in determining whether and to what extent a downward departure as a result of a government motion pursuant to Title 18,

11

U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 is warranted.

7.    **Withdrawal of Plea Not Permitted.**    The defendant understands that if the court accepts this plea agreement but imposes a sentence with which the defendant does not agree, the defendant will not be permitted to withdraw this plea of guilty.

8.    **Payment of Special Assessment.**    The defendant understands that a mandatory special assessment of $100 per count of conviction will be entered against the defendant at the time of sentencing. The defendant agrees to deliver to the clerk of the court a check payable to the clerk in the appropriate amount no later than the day of plea. If the defendant fails to make full payment of the special assessment the United States will no longer be bound by the provisions contained in Section 4(b) of this agreement.

9.    **Waiver of Appeal and Collateral Attack.**    Defendant knowingly and voluntarily waives any right to any appeal or collateral attack on any matter in connection with this prosecution and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. By entering into this agreement, the defendant knowingly waives any right to a appeal of a sentence imposed which is within the guideline range determined appropriate by the court. The defendant also waives any right to any challenge to his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255, except to the extent that such a § 2255 claim is deemed unwaivable under the holding of *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States

12

exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal his sentence as authorized by Title 18, U.S.C. § 3742(a).

      **10.**   **Waiver of FOIA Request.**   The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

      **11.**   **Waiver of Claim for Attorney's Fees.**   The defendant waives all claims under the Hyde Amendment, Title 18, U.S.C. § 3006A, for attorneys fees and other litigation expenses arising out of the investigation or prosecution of this matter.

      **12.**   **Defendant's Agreement to Cease Business Activities.**   The defendant agrees to: (1) voluntarily terminate and cease any participation as an agent or representative of any employer or foreign national with respect to any matter concerning the U.S. Department of Labor's Foreign Labor Certification program, including any and all Department of Labor certifications, assistance, and resources; (2) voluntarily terminate and cease any participation as an agent or representative of any employer or foreign national with respect to any program administered by the U.S. Department of Homeland Security, including the Immigration and Customs Enforcement Service, including the application or petitioning for benefits or visas sought or applied for by any foreign national or petitioning employer; (3) to forever be barred in the future from seeking eligibility, certification, or participation in any and all U.S. Department of Labor and U.S. Department of Homeland Security programs, either directly or indirectly

13

through any Botes or Coetzee family member or relation, or directly or indirectly through transferees, successors, or assignees in interest of PJ Services, LLC as a public, private, quasi-public, profit, or non-profit business concern; (4) to execute any an all documents required by the U.S. Department of Homeland Security or the U.S. Department of Labor to accomplish the agreements reached by the parties herein at any time of the government's choosing.

13.    **Full Disclosure by United States.**    The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities.  The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty.  The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The defendant also has the right to provide information concerning the offense to the United States Probation Office.

14.    **Parties to the Agreement.**    The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

15.    **No Other Agreements.**    The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel.  Further, the

14

defendant acknowledges that he has read the plea agreement, understands it and agrees it is true

and accurate and not the result of any threats, duress or coercion.  The defendant further

understands that this plea agreement supersedes any and all other agreements or negotiations

between the parties, and that this agreement embodies each and every term of the agreement

between the parties.  The defendant acknowledges that the defendant is entering into this

agreement and is pleading guilty because the defendant is guilty and is doing so freely and

voluntarily.

Date: 10-20-05

JAMES A. BROWN    #14254
Assistant U.S. Attorney
United States Attorney's Office
444 S.E. Quincy Ave., Suite 290
Topeka, Kansas  66683
785-295-2850

Date: 10/20/05

RANDY M. HENDERSHOT  #8962
Criminal Chief/Supervisor

Date: 10/20/05

PETRUS JACOBUS BOTES
Manager and Co-Principal
for PJ Services LLC

Date: 10-20-05

JOHN J. AMBROSIO, KS #07489
John J. Ambrosio, Chartered
Attorneys for Defendant Botes

15

5897 SW 29th Street
Topeka, Kansas 66614
(785) 233-0524


_____      Date: **10.20.05**
JOYCE YVONNE COETZEE
President and Co-Principal
for PJ Services LLC


_____      Date: **10/20/05**
ROGER L. FALK
Attorney for Defendant Coetzee
301 W. Central
Wichita, KS 67202-1077
Tel: 316-265-5115



# ARTICLES OF ORGANIZATION
## OF
## P J SERVICES, LLC

6661 01 01-27-2000 15:31:36
2033838
51 NEW CORPORATION
$150.00

The undersigned, for the purpose of forming a Limited Liability Company under K.S.A. 17-7601 et. seq., or otherwise commonly known as, The Kansas Limited Liability Company Act, " do adopt the following Articles of Organization:

### ARTICLE I

**NAME:** The name of this Limited Liability Organization is:

P J SERVICES, LLC
1811 1/2 South 9th, Apt. 11
Salina, Kansas 67401

### ARTICLE II

**DURATION:** The latest date on which the limited liability company is to dissolve is January 1, 2029.

### ARTICLE III

**PURPOSE:** The Company may engage in any activity or business permitted under the laws of the United States and under the laws of the State of Kansas.

### ARTICLE IV

**INITIAL REGISTERED OFFICE AND AGENT:** The initial registered agent and office of the Company will be P J SERVICES, LLC, 1811 1/2 South 9th, Apt. 11, Salina, Kansas 67401. The initial street address of the principal office of the company in the State of Kansas will be 1811 1/2 South 9th, Apt. 11, Salina, Kansas 67401. The managers(s) may from time to time move the registered office to any other address in the state of Kansas and may establish additional offices in and out of the state of Kansas.

## ARTICLE V

**RIGHT TO OPERATE:** The right of the Company to continue operating shall not be effected on the death, retirement, resignation, expulsion, bankruptcy, or any other occurrence which terminates the membership of a member in this company.

## ARTICLE VI

**NEW MEMBERS:** New members may be admitted to the Company by a majority vote of the existing members.

## ARTICLE VII

**WITHDRAWAL OF MEMBER:** The voluntary or involuntary withdrawal of a member shall entitle such member a distribution of capital limited to the amount of said contributions made.

## ARTICLE VIII

**MEMBERS AND MANAGEMENT:** The name and addresses of the initial two members are:

Petrus Jacobus Botes

Joice Yvonne Coetzee

Management of the Company is reserved to Petrus Jacobus Botes.

## ARTICLE IX

**TRANSFERABILITY OF MEMBERS INTEREST:** The interest of any member in this Company may be transferred or assigned with the written consent of all of the other members.

## ARTICLE X

**TAX CLASSIFICATION:** The Company intends to be classified as a partnership for federal income taxation purposes.

2

## ARTICLE XI

**AMENDMENTS:** The Company reserves the rights to amend or repeal any provisions of these Articles of Organization, or any amendment(s) hereto, and any right conferred upon the members is subject to the reservation.

IN WITNESS WHEREOF, the undersigned creator has executed these Articles of Organization this 26th day of _____, 2000.

Larry V. Schneider

State of Nebraska )
)ss.
County of York )

Before me, a Notary Public authorized to take acknowledgments in the State and County set forth above, personally appeared Larry V. Schneider known to me to be the person who executed and foregoing Articles of Organization.

Notary Public

2

203-383-8          1 8 0 0 0 0 0 0 4 9 8

Note: Please type or print legibly with black ink.

Secretary of State / Corporation Division          **Form**
# Certificate of Amendment for a Kansas Limited Liability Company          **CL**

1. Name of the Limited Liability Company:

*PJ SERVICES, LLC*

2. The Limited Liability Company amends its articles of organization as follows:

*NEW MEMBER:*

*AFRICA PRIDE LIMITED*

*75 ANDERSON ST.*

*LOUIS TRICHARDT 0920*

Da 04b 1-01-01-31-2004 12:00:24
2033630
53 CORPORATION CHANGE
$20.00

FILED
SECRETARY OF STATE
KANSAS
'00 MAR 30 AM 11 47

3. Future effective date if not effective upon filing, but not later than 90 days after filing date.

_____
Day   Month / Year

I declare under penalty of perjury that the foregoing is true and correct.

*Jerry Vesdell Schneider*
Member or Manager or Authorized Person

---

## INSTRUCTIONS

Submit the certificate of amendment in duplicate, along with the $20 filing fee.

### MAIL TO:
Ron Thornburgh
Secretary of State
First Floor, Memorial Hall
120 S.W. 10th Ave.
Topeka, KS 66612-1594

For general information and forms requests, please call (785) 296-4564

If you have comments or suggestions, you may e-mail us at:
kssos@kssos.org

This form may be downloaded from our web site at:
www.kssos.org